UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
    LAWRENCE E. GOLDEN                     )        Case No. 05-12032-SSM
    SHARON L. GOLDEN                       )        Chapter 13
                                          )
                Debtors                    )

**MEMORANDUM OPINION AND ORDER**

Before the court is the application of Ronald B. Cox, Esquire, for approval and payment of $2,345.00 in additional compensation as counsel for the debtors.  The only objection was by the debtors, who filed a written opposition and appeared at the hearing, essentially stating that Mr. Cox had already been paid the full amount of the fee that had been quoted to them when they hired him, and that because all of their expenses had increased, they were stretched to the limit financially and could not afford to pay any additional amounts.  The trustee advised the court that only $929 was available in the plan to pay the requested fees without reducing the dividend to unsecured creditors.  For the reasons stated, the court will approve additional fees in the amount of $2,051.00, of which $926.00 will be paid through the plan, with the remainder to be collected from the debtors only after the plan is concluded.

<u>Background</u>

Lawrence E. Golden and Sharon L. Golden are husband and wife.  They filed a joint voluntary petition in this court on May 24, 2005, for adjustment of their debts under chapter 13 of the Bankruptcy Code. They were represented in connection with the filing by Ronald B. Cox, an experienced bankruptcy attorney.  Mr. Cox filed a disclosure of compensation stating that he

1

had agreed to represent the debtors for a fee of $1,500.00, of which $750.00 had been paid by the

debtors prior to the filing of the petition.  The disclosure states that the agreed fee does not

include "[a]ny representation after scheduled 341 Hearing or motions to extend time."[1]  At the

court's request, Mr. Cox supplied a copy of his "Bankruptcy Retainer" agreement with the

debtors dated April 8, 2005.  Under the agreement, the debtors agreed to pay Mr. Cox "Seven

Hundred Fifty — balance in Plan" to file their bankruptcy case.  The agreement further states:

> If this is to be a Chapter 13 petition, I understand and agree that the fees that I
> have paid to Ronald B. Cox above plus the sum of $750.00 to be included in my
> Chapter 13 plan and paid by the Trustee will cover my representation up to the
> point where a Chapter 13 plan is presented and the completion of the original 11
> U.S.C. 341 Hearing.  I understand that this fee does not cover Ronald B. Cox's
> representation of me should actions be brought by the Trustee or by creditors for
> my non-compliance with the Plan or should new Plans be required.
>
> I understand that, for Chapter 13 matters beyond my 341 Hearing, if they are due
> to my non-compliance, that Ronald B. Cox may ask for an additional retainer and
> I understand and agree that matters after the 341 Hearing will be billed at the rate
> of $225.00 hourly.
>
> I understand and agree that Ronald B. Cox will first present any billing for such
> payments as part of my Plan by the Trustee but that I remain liable for any unpaid
> amounts.

The debtors' plan, filed on June 8, 2005, was confirmed on July 25, 2005.  It requires the

debtors to pay the chapter 13 trustee $790.00 per month for 60 months.  From the payments

received the trustee was to pay Mr. Cox what was stated to be the remaining $850.00 balance of

his $1,500.00 fee,[2] a secured automobile loan, a secured furniture loan, and modest arrears on

---

[1]  "341 Hearing" is bankruptcy jargon for the meeting of creditors convened under § 341(a),
Bankruptcy Code.

[2]  The $100 discrepancy between the $750 balance due shown on the disclosure of compensation
and the $850 stated in the plan is unexplained.  The billing statements attached to the application

(continued...)

two mortgages against the debtors' residence.  The remaining funds would be paid to the

unsecured creditors, with the estimated distribution being 100 cents on the dollar on joint claims

of husband and wife and 10 cents on the dollar to non-joint creditors.

For approximately a year following confirmation, the docket entries of the case record no

significant activity.  In September 2006, however, the debtors filed a motion for permission to

refinance their residence. That motion was withdrawn the following month.  No significant

docket activity is shown for the next 18 months until the filing of the application that is presently

before the court.  The billing records attached to the application reflect 5.5 hours of attorney time

and 6 hours of paralegal time through the meeting of creditors and 9.25 hours of attorney time

and 1 hour of paralegal time following the meeting of creditors.  The attorney time is billed at

$225 an hour, and the paralegal time is billed at $70 per hour. The largest portion (6.3 hours) of

the attorney time relates to the motion to refinance that was withdrawn.  Most of the remaining

time relates to a subsequent proposed refinance that did not result in a filed motion and some

discussions concerning a proposed car purchase.  The application represents that the plan

"contains sufficient reserves to pay these fees . . . or can be extended in time to do so without

prejudice to creditors[.]"

---

[2](...continued)
reflect receipt of payments from the trustee of $736.32, but the application itself states that Mr.
Cox has received $850.00 from the trustee.  For the purpose of the present ruling, the court
assumes that Mr. Cox has been paid a total of $1,600.00 to date—the $750.00 retainer and
$850.00 from the trustee.

3

<u>Discussion</u>

A.

In a chapter 13 case, the attorney for the debtor may be compensated from the estate "for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor as well the other factors set forth [in § 330 of the Bankruptcy Code]." § 330(a)(4)(B), Bankruptcy Code. The "other factors" specified in the statute are:

> the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3), Bankruptcy Code. Although in some instances an attorney might agree with a prospective client on a flat fee to cover a chapter 13 case from beginning to end, by far the more common practice (especially given the wide variation in services that might be required over the 3 to 5-year life of a typical plan) is for the attorney to quote a fee covering expected services through a particular point in the case, such as confirmation of a plan, with any additional services to be charged separately—either at a specified hourly rate or, less commonly, at specified flat-fee amounts. To be sure, the limitation on services covered by the flat fee does not affect the

4

attorney's ethical responsibility to provide necessary services to his or her client throughout the case. An attorney, having once entered an appearance for a debtor, remains counsel of record in this district until the case is closed or the attorney is expressly granted leave to withdraw for cause.

Nevertheless, the court does not expect attorneys to work for free unless the case is one justifying *pro bono* representation. A successful chapter 13 program is dependent upon the willingness of experienced and skilled attorneys to provide legal representation to debtors. This is more true than ever since enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which greatly increased the complexity of chapter 13 cases. For that reason, when an attorney has been called upon to provide services beyond those routinely expected in a chapter 13 case, fundamental fairness and sound policy both require that the attorney should be adequately compensated for the additional work. Put another way, if attorneys are not fairly compensated for representing chapter 13 debtors, they will be forced by simple economics to switch to some other area of legal practice.

B.

As noted, the debtors asserted at the hearing on the fee application that they understood the $1,500.00 fee would cover the entire case. The signed fee agreement seems reasonably clear, however, that the stated fee did not cover services after the meeting of creditors. Although the practice of this court is to treat flat fees as generally covering required services through plan confirmation (together with any necessary filings at the conclusion of the plan to enable the

5

debtor to receive a discharge)[3] and not merely the meeting of creditors, the services for which

Mr. Cox seeks additional compensation all occurred well after confirmation.  The debtors do not

deny that the services were provided, nor do they contest that the services were beneficial at the

time they were rendered.  The mere fact that the contemplated refinance did not pan out does not

mean that the work was not performed or that the attorney should not be compensated for it,

although in many instances the proper exercise of billing judgment[4] will dictate a reduction in a

fee when, due to intervening or unforseen circumstances, a client does not receive the expected

benefit from the services that were provided or the client's financial circumstances do not permit

payment of market-rate fees.

　　　In this case, the requested hourly fee of $225.00 per hour is well within the range of fees

charged by experienced consumer bankruptcy attorneys.  The services provided were reasonably

calculated to benefit the debtors, and the time expended likewise appears reasonable given the

nature of the issues.  Under the circumstances, the court determines that $2,151.00 represents a

reasonable fee for the 9.25 hours of attorney time and 1 hour of paralegal time expended  after

plan confirmation.  Since counsel (as a result of misstating in the plan the amount still due on the

flat fee) appears to have been overpaid $100.00 by the trustee, that overpayment is appropriately

applied to the post-confirmation fees, leaving a balance of $2,051.00.

---

[3]  Since the present case was filed before the effective date of the amendments made by the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the certifications required
by that Act as a condition of receiving a discharge are inapplicable, and a discharge would be
issued as a matter of course after the trustee files a report of completion of plan payments.

[4]  "Billing judgment" has been defined as "the voluntary reduction of a fee by counsel to a
private client for services [that] either conferred a negligible benefit or were excessive."  *In re
Vernon-Williams*, 377 B.R. 156, 192 (Bankr. E.D. Va. 2007) (quoting *In re Maxine's Inc.*, 304
B.R. 245, 249 (Bankr. D. Md.. 2003)).

C.

There is, however, a further consideration.  As noted, the application represents that the plan contains sufficient reserves to pay the requested fee without prejudice to unsecured creditors or could be extended in time to do so.  Neither is true.  The chapter 13 trustee has a cushion of only $929.00 to pay the fee without reducing the dividend to unsecured creditors. And the plan, because it is already a 60-month plan, cannot be extended.  The debtors, moreover, have represented—and the court accepts—that they are unable to pay any more into the plan than they have already committed.

The requirement in this district that counsel seeking supplemental fees in a chapter 13 case disclose whether allowance and payment of the additional fees would reduce the dividend being paid to unsecured creditors and, if so, whether the plan may be modified to pay the requested fees without reducing the dividend, is taken seriously by the court.  It is simply not proper to make the certification in the disjunctive—counsel must certify *which* of the two applies.  This court has previously expressed its disapproval of the practice of rote recitation in fee applications of boiler-plate language built into a word processing template. *In re Robinson*, 368 B.R. 492, 499 (Bankr. E.D. Va. 2007).   As the court observed in that case, "The court, quite simply, expects more of counsel.  If there is any doubt on counsel's part, inquiry of the chapter 13 trustee *prior* to filing the application would assure that correct information was provided to the court and to creditors."  *Id.*  The reason is simple: creditors who might object if they knew their ox was in danger of being gored would have no motive to scrutinize the fee request if assured that their ox was safe.  *Id.*  As the court noted in *Robinson*, this does not mean that a fee application can never be approved if granting it would reduce the dividend to unsecured

creditors.  *Id.* at 499-500.  But at the very least it does require that creditors be plainly and conspicuously informed of what is afoot.  Where that is not done, the court will not approve payment of additional fees to be paid through the plan, although—if the fees are otherwise appropriate—the court may approve them as reasonable and let the attorney collect them from the debtor at the conclusion of the case.  *Id.* at 500.

The approach suggested in *Robinson* will be followed in this case.  The court will allow fees in the amount of  $2,051 as reasonable for post-petition services to the debtors but will approve only $926.00 of those as an expense of administration to be paid through the plan   The balance of the fees—$1,125.00---may be collected from the debtors only <u>after</u> payments under the plan are complete.  Notwithstanding any provision to the contrary in the fee agreement, interest on the deferred portion of the fee shall not accrue interest until after a discharge is granted at the conclusion of the plan.

O R D E R

For the foregoing reasons, it is

**ORDERED:**

1.  The fees of Ronald B. Cox, Esquire, for post-confirmation services provided to the debtors are approved as reasonable under § 329(b), Bankruptcy Code, in the amount of $2,051.00, of which **<u>$926.00</u>** is approved under § 330(a)(4)(B) as an expense of administration to be paid by the chapter 13 trustee under the terms of the confirmed plan.

2.  Any portion of the approved fee that remains unpaid at the conclusion of the case may

be collected directly from the debtors unless the case is converted to chapter 7.   No interest shall

accrue on any unpaid fee until the debtors receive a discharge or the case is sooner dismissed.

Date: _____                    _____
                                                Stephen S. Mitchell
Alexandria, Virginia                            United States Bankruptcy Judge


Copies to:

Lawrence E. Golden
Sharon L. Golden
12903 Kenmar Drive
Woodbridge, VA 22193
Debtors

Ronald B. Cox, Esquire
Suite C, 308 Poplar Alley
P.O. Box 468
Occoquan, VA  22125
Counsel for the debtors

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee